UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

GRAND JURY N-06-3

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL NO.: |
| | : |
| v. | : VIOLATIONS: |
| | : 18 U.S.C. § 371: [Conspiracy]; |
| | : 15 U.S.C. §§ 78j(b), 78ff: [Securities Fraud]; |
| | : 15 U.S.C. §§ 78j(b), 78ff: [Insider Trading]; |
| JOHN N. MILNE | : 15 U.S.C. §§ 78m(a), 78ff: [False Statements to |
| | : the SEC]; |
| | : 18 U.S.C. § 2: [Aiding and Abetting]; |
| | : 28 U.S.C. § 2461(c) & 18 U.S.C. § 981(a) |
| | : [Forfeiture] |

## Indictment

The Grand Jury Charges:

## COUNT ONE
## (18 U.S.C. § 371)
## (Conspiracy – Securities Fraud, False Books and Records
## False Filings with the SEC, and False Statements to Auditors)

### BACKGROUND
### The Defendant and Relevant Entities and Persons

1.    At all times relevant to this Indictment, JOHN N. MILNE, the defendant herein,

was a resident of Connecticut.  From September 1997 until his termination in or about August

2005, defendant JOHN N. MILNE served in various senior executive positions at United Rentals,

Inc. and its wholly-owned subsidiary, United Rentals (North America), Inc., including President,

Chief Acquisitions Officer, and Chief Financial Officer ("CFO").

2.    At all times relevant to this Indictment, United Rentals, Inc. and its wholly-owned

subsidiary, United Rentals (North America), Inc., (collectively referred to herein as "URI,"

"United Rentals" and "the Company"), were Delaware corporations with their principal place of

business in Greenwich, Connecticut. The Company was an equipment rental company which rented equipment ranging from heavy machines to hand tools. The Company's common stock was publicly traded on the New York Stock Exchange under the symbol "URI." The Company's securities were registered with the United States Securities and Exchange Commission ("SEC") pursuant to Section 12(b) of the Securities Exchange Act of 1934 (the "Exchange Act").

3.      At all times relevant to this Indictment, defendant JOHN N. MILNE, based at the Company's headquarters in Greenwich, Connecticut, was a member of the Company's board of directors and owned a substantial number of shares and options to purchase shares of the Company's common stock.

4.      At all times relevant to this Indictment, Michael J. Nolan, a co-conspirator not named in this Indictment, served as the Company's CFO from the time of the Company's formation in September 1997 until approximately December 2002. As CFO, Nolan signed and caused to be filed with the SEC various documents, including annual reports (SEC Form 10-K), quarterly reports (SEC Form 10-Q), current reports of the Company's operations (SEC Form 8-K).

The Securities and Exchange Commission
and the Company's Obligations as a Publicly Traded Company

5.      At all times relevant to this Indictment, the United States Securities and Exchange Commission was an independent agency of the United States government charged by law with preserving honest and efficient markets in securities. The federal securities laws, rules, and regulations were designed to ensure that the financial information of publicly traded companies was accurately recorded and disclosed to the investing public.

6. At all times relevant to this Indictment, URI disclosed its financial information to the public through various means, including public earnings reports, conference calls with stock analysts, the electronic filing of quarterly reports (SEC Forms 10-Q) and annual reports (SEC Forms 10-K) with the SEC, and through other documents filed with the SEC, including press releases submitted with current reports on SEC Form 8-K.

7. At all times relevant to this Indictment, under the federal securities laws, rules, and regulations, URI was required, among other things: (i) to make and keep books, records, and accounts that accurately and fairly reflected its business transactions; and (ii) to file with the SEC and distribute to the investing public quarterly and annual reports that included accurate and reliable financial statements prepared in accordance with generally accepted accounting principles ("GAAP").

8. In his roles as an officer of the Company, including as the CFO of the Company, defendant JOHN N. MILNE signed and caused to be filed with the SEC various documents, including current reports of the Company's operations.

9. At all times relevant to this Indictment, the Company employed independent auditors who performed year-end audits of its financial statements. In addition, the independent auditors performed quarterly reviews of the Company's financial information. The auditors were provided with management representation letters signed by officers of URI, including defendant JOHN N. MILNE when he served as the CFO of the Company, representing, among other things,

3

that management recognized its responsibility for the fair presentation of the Company's consolidated financial statements and that the consolidated financial statements conformed with generally accepted accounting principles.

10.     As described in greater detail below, between December 2000 and March 2002, United Rentals engaged in transactions that were improperly accounted for as minor sale-leasebacks. As a result of these deals, URI fraudulently booked millions of dollars of gains in the periods in which the deals were done. On or about March 31, 2006, United Rentals filed an annual report on Form 10-K in which it restated, among other things, its pre-tax income for the years 2000 through 2003 as a result of these sale-leaseback transactions. United Rentals noted that "[i]t has been determined that the accounting for these transactions involved irregularities."

### THE CONSPIRACY

11.     Beginning in or about December 2000 and continuing until in or about July 2005, in the District of Connecticut and elsewhere, the defendant, JOHN N. MILNE, together with Michael J. Nolan, and others known and unknown to the grand jury, unlawfully, willfully and knowingly did combine, conspire, confederate, and agree together and with each other, to commit offenses against the United States, namely:

a.     by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, to use and employ manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 ("Rule 10b-5"), in connection with the purchase and sale of URI securities, by (i) employing devices, schemes, and artifices to defraud purchasers and holders of URI securities and other members of the investing public; (ii) making untrue statements of

4

material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit on purchasers and holders of URI securities and other members of the investing public, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a) and Rule 10b-5;

b.      to make and cause to be made, directly and indirectly, statements in reports and documents required to be filed with the SEC under the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder, which statements were false and misleading with respect to material facts and omitted to state material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, that is, signing and filing and causing to be filed with the SEC various forms containing the Company's audited financial statements and other financial information, which the defendant knew contained materially false and fraudulent earnings and earnings per share numbers, in violation of Title 15, United States Code, Sections 78m(a) and 78ff and Title 17, Code of Federal Regulations, Sections 240.12b-20 and 240.13a-1;

c.      to falsify and cause to be falsified, directly and indirectly, the books, records, and accounts, of the Company which was an issuer which has a class of securities registered pursuant to section 78*l* of Title 15, United States Code and which was required to file reports pursuant to section 78*o*(d) of Title 15, United States Code, in violation of Title 15, United States Code, Sections 78m(b)(2), 78m(b)(5) and 78ff, and Title 17, Code of Federal Regulations, Section 240.13b2-1, which, in relevant part, require the Company to make and keep books, records and accounts in reasonable detail, which accurately and fairly reflect the transactions and dispositions

of the assets of the Company;

d. to make and cause to be made, directly and indirectly, materially false and misleading statements to an accountant and to omit to state or cause another person to omit to state a material fact necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with an audit, review, or examination of the financial statements of URI or in connection with the preparation or filing of any document or report required to be filed with the Securities and Exchange Commission, in violation of Title 15, United States Code, Sections 78m(b)(1) and 78ff, Title 17, Code of Federal Regulations, Section 240.13b2-2, which prohibit any officer or director from making materially false and misleading statements to an accountant and omitting to state any material fact necessary in order to make statements made not misleading, in light of the circumstances under which such statements were made.

### The Purpose of the Conspiracy

12. The purpose of the conspiracy was for the defendant JOHN N. MILNE together with Michael J. Nolan and others, known and unknown to the grand jury, to artificially increase and maintain the Company's stock price, benefit personally and conceal the true financial condition of the Company, including its earnings and earnings per share figures, from stock market analysts, the SEC, and the investing public, and conceal the true nature of the books, records, and accounts of the Company from its auditors.

## Manner and Means of the Conspiracy

13.    The manner and means by which the defendant and his co-conspirators sought to accomplish and did accomplish said conspiracy included, among others, the following:

14.    It was part of the conspiracy that defendant JOHN N. MILNE and his co-conspirators would and did cause the Company to enter into transactions that were fraudulently accounted for as minor sale-leasebacks ("MSLBs"), through which URI recognized millions of dollars in immediate gains in order to meet certain earnings expectations.

15.    It was further part of the conspiracy that defendant JOHN N. MILNE and others structured and negotiated three MSLBs for which the Company fraudulently recognized gains in December 2000 and June 2001. In these transactions, URI sold rental equipment to a finance company ("the Finance Company"), leased it back for a period of months and immediately booked millions of dollars in gains on the sales. Third-party equipment manufacturers were brought into the deals to provide guaranties of the residual value of the equipment sold to the Finance Company. In connection with these three MSLBs, the defendant executed side agreements between URI and the manufacturers to cover them for future losses on the residual value of the equipment sold to the Finance Company and which effectively shifted the risk of loss back to URI. The defendant and others also caused URI to make undisclosed fee payments to the Finance Company in connection with these transactions. As a result of the structure of these transactions, the gains booked by URI to meet earnings expectations were fraudulent. The artificial earnings generated through these MSLBs were included in URI's earnings releases as well as its consolidated financial statements and in other financial data defendant JOHN N. MILNE and his co-conspirators caused URI to file with the SEC, including its annual reports on

Form 10-K for fiscal years 2000 through 2003. As a result, the defendant and his co-conspirators misled the Company's shareholders, stock market analysts, the SEC and the investing public regarding the Company's earnings.

16.    It was further part of the conspiracy that the defendant JOHN N. MILNE and his co-conspirators would and did sell shares of the Company's stock while in possession of material non-public information concerning the financial performance of the Company, namely, that the stock price was artificially inflated by virtue of the false and fraudulent earnings numbers and earnings per share numbers that had been reported to stock market analysts, the SEC and the investing public.

17.    It was further part of the conspiracy that the defendant JOHN N. MILNE and his co-conspirators would and did make and cause to be made materially false and fraudulent statements about the Company's earnings and earnings per share numbers in reports and documents that were required to be filed with the SEC, including annual reports filed on SEC Form 10-K for the years 2000 through 2003.

18.    It was further part of the conspiracy that defendant JOHN N. MILNE and his co-conspirators would and did record and cause others to record false entries in the Company's books and records, including falsely inflated gains and false entries concerning payments made in settlement of the MSLBs.

19.    It was further part of the conspiracy that defendant JOHN N. MILNE and his co-conspirators would and did make materially false and misleading statements and material omissions to the Company's auditors. In this regard, defendant JOHN N. MILNE and his co-conspirators would and did seek to conceal the true nature of the fraudulently recognized gains

recorded from the MSLBs by concealing the side agreements as well as fees paid to the Finance Company, and by signing management representation letters provided to the Company's auditors in which they falsely represented material facts and failed to state material facts necessary in order to make statements made not misleading.

## OVERT ACTS

20.     In furtherance of the conspiracy and to effect the objects thereof, within the District of Connecticut and elsewhere, defendant JOHN N. MILNE, co-conspirator Michael J. Nolan, and others did commit and cause to be committed the following overt acts, among others:

The Manufacturer T MSLB

a.      On or about December 18, 2000, defendant JOHN N. MILNE, and Michael J. Nolan participated in an investor conference call in which United Rentals management discussed its revised expected earnings per share for the fourth quarter 2000.

b.      On or about December 20, 2000, Michael J. Nolan attended a meeting at URI's offices in Greenwich, Connecticut, with representatives of Manufacturer T and the Finance Company to discuss a transaction that resulted in the first MSLB (referred to herein as the "Manufacturer T MSLB"). This transaction was structured so that Manufacturer T, a third-party equipment vendor, entered into a remarketing agreement with the Finance Company and, in turn, entered a separate remarketing agreement with URI to avoid future losses. URI also agreed to purchase new equipment from Manufacturer T at premium prices.

c.      On or about December 28, 2000, defendant JOHN N. MILNE approved a funds transfer request authorizing a wire transfer of $6,994,861 from URI to Manufacturer T's account at Fleet Bank, Boston, Massachusetts, account number ending in 390, and caused the wire

transfer of funds to be sent over interstate wires. This request was part of the premium payment on the purchase of new equipment from Manufacturer T.

d.     On or about December 29, 2000, defendant JOHN N. MILNE negotiated, executed and sent or caused to be sent to Manufacturer T by facsimile, a copy of the executed remarketing agreement between URI and Manufacturer T, using a facility of interstate commerce. The defendant then concealed this agreement from the Company's outside auditors.

e.     On or about December 29, 2000, Michael J. Nolan executed, on behalf of URI, a master lease agreement with the Finance Company and thereafter entered and caused to be entered in the books and records of URI approximately $25.3 million of revenue and approximately $12.2 million of gain for the fourth quarter 2000, which were based on the fraudulent minor sale-leaseback.

f.     On or about June 28, 2001, defendant JOHN N. MILNE caused a letter to be sent to Manufacturer T relating to the URI-Manufacturer T remarketing agreement, which letter specified the scope of the remarketing agreement with Manufacturer T.

Earnings Reports for Fourth Quarter and Year-End 2000

g.     On or about February 28, 2001, defendant JOHN N. MILNE and Michael J. Nolan caused URI to issue a press release announcing United Rentals fourth quarter 2000 and full year 2000 financial results, and participated in an investor conference call in which Michael J. Nolan announced URI's earnings for the fourth quarter 2000 and for the full year 2000.

h.     On or about March 22, 2001, defendant JOHN N. MILNE and Michael J. Nolan filed and caused to be filed with the SEC on Form 10-K the annual report of United Rentals for the year ending December 31, 2000.

The Manufacturer G MSLB

i.      On or about June 25, 2001, Michael J. Nolan executed a master lease agreement

between URI and the Finance Company as part of another MSLB (the "Manufacturer G MSLB").

Nolan thereafter entered and caused to be entered in the books and records of URI approximately

$8,952,550 of revenue and approximately $6,290,614 of gain for the second quarter 2001.

j.      On or about June 27, 2001, defendant JOHN N. MILNE executed the URI-

Manufacturer G remarketing agreement.  This agreement effectively covered Manufacturer G for

losses on the Manufacturer G MSLB transaction.  This agreement was concealed from the

Company's outside auditors.

The Manufacturer J MSLB

k.      On or about June 26, 2001, Michael J. Nolan executed a master lease agreement

between URI and the Finance Company as part of another MSLB (the "Manufacturer J MSLB").

Nolan thereafter entered and caused to be entered in the books and records of URI approximately

$10,329,520 of revenue and approximately $6,856,882 of gain for the second quarter 2001.

l.      On or about July 3, 2001, defendant JOHN N. MILNE executed an agreement

between URI and Manufacturer J whereby URI agreed to certain purchase commitments with

Manufacturer J on the MSLB.

m.      On or about October 12, 2001, defendant JOHN N. MILNE executed a

remarketing agreement between URI and Manufacturer J, which effectively guaranteed

Manufacturer J against losses on the Manufacturer J MSLB.  This agreement was concealed from

the Company's outside auditors.

Misleading Information in Response to SEC Inquiry

n.     On or about September 6, 2001, defendant JOHN N. MILNE and Michael J. Nolan caused to be filed with the SEC an amendment to a registration statement on SEC form S-3 that omitted to state material information concerning URI's remarketing agreement with Manufacturer T.

False Earnings Reports and SEC Filings for 2001

o.     On or about March 1, 2002, Michael J. Nolan filed and caused to be filed with the SEC on Form 8-K a current report attaching as exhibits a press release dated February 26, 2002 and a transcript of an investor conference call Nolan and the defendant had participated in on February 26, 2002 reporting diluted earnings per share for the year ended December 31, 2001.

p.     On or about March 29, 2002, the defendant JOHN N. MILNE, Michael J. Nolan and others filed and caused to be filed with the SEC on Form 10-K the annual report of United Rentals for the year ending December 31, 2001.

Sale of Shares of URI Stock

q.     On or about March 19, 2002, defendant JOHN N. MILNE signed and executed an underwriting agreement with an underwriter pursuant to which he and the other Selling Stockholders agreed to sell, collectively, 8 million shares of URI stock to the underwriter of a public offering.

r.     On or about March 21, 2002, defendant JOHN N. MILNE attended a special meeting of the board of directors of United Rentals, Inc. Defendant JOHN N. MILNE, a member of the board, served as the corporate secretary for purposes of the meeting, at which the board of directors of United Rentals, Inc. approved, among other things, the Company's executing an

underwriting agreement in connection with the sale by defendant JOHN N. MILNE, Michael J. Nolan and others of a total of 8,000,000 shares of United Rentals common stock and authorizing the filing of a prospectus supplement relating to the stock offering.

s.    On or about March 22, 2002, defendant JOHN N. MILNE caused a wire transfer of $17,214,648 in funds to be sent from the underwriter to his Merrill Lynch account, which funds were proceeds of the stock sale.

t.    On or about March 22, 2002, defendant JOHN N. MILNE paid and caused to be paid $5,097,851 to the Company in connection with the exercise of options for the purchase of 300,000 shares of URI stock, defendant JOHN N. MILNE caused the $5,097,851 to be paid by the underwriter as part of a larger wire transfer sent by interstate wire to the Company's bank account in California.

False Sarbanes-Oxley Certification

u.    On or about August 14, 2002, defendant JOHN N. MILNE and Michael J. Nolan sent a memorandum in connection with the certifications to be signed by URI's CFO and CEO. The memorandum did not acknowledge the fraudulent nature of the accounting for the MSLBs, about which they were well aware.

v.    On or about August 14, 2002, co-conspirator Michael J. Nolan filed a false certification with the SEC to the effect that he was unaware of any false statement of material fact in, among other documents, the Company's 10-K for the period ending December 31, 2001 or any omission to state a material fact necessary to make the statements in the 10-K, in light of

the circumstances under which they were made, not misleading, when in fact, he well knew that the earnings per share figures in the Company's 10-K had been fraudulently inflated by virtue of the MSLBs.

Settlement of MSLBs

w.    In or about September 2002, defendant JOHN N. MILNE and others attended a meeting at Manufacturer T to discuss how to satisfy URI's outstanding obligations under its remarketing agreement with Manufacturer T.

x.    On or about December 31, 2002, defendant JOHN N. MILNE executed a contract on behalf of URI with Manufacturer T relating to URI's obligations under the remarketing agreement between URI and Manufacturer T.

y.    On or about January 3, 2003, defendant JOHN N. MILNE caused United Rentals to wire transfer $8,777,172 to Manufacturer T to cover losses incurred by Manufacturer T in connection with the Manufacturer T MSLB.

z.    On or about March 28, 2003, defendant JOHN N. MILNE approved a check authorization for $4,030,328 to be paid to Manufacturer T (which had acquired Manufacturer G) as reconciliation of the Manufacturer G MSLB, which check requisition falsely noted that the payment was for the purchase of equipment.

aa.    Beginning in or about January 2003 through at least in or about December 2003, defendant JOHN N. MILNE caused others to make false entries on URI's books and records concerning the settlement payments made in connection with the Manufacturer T MSLB and the Manufacturer G MSLB.

False Management Representation Letter to Outside Auditors

bb.    On or about February 20, 2003, defendant JOHN N. MILNE and others executed
and sent management representation letters to the outside auditors for United Rentals, Inc. and
United Rentals (North America), Inc., in which JOHN N. MILNE falsely represented that (a)
United Rentals management had made available to the outside auditors all significant contracts
and agreements, (b) that transactions with related parties and related amounts receivable or
payable, including sales, purchases, loans, transfers, leasing arrangements, and guarantees, had
been properly recorded and disclosed in the consolidated financial statements, and (c) that United
Rentals management had no knowledge of any fraud or suspected fraud affecting the companies
involving management and that management had no knowledge of any allegations of fraud or
suspected fraud affecting the companies received in communications from, among others,
employees and former employees.

False SEC Filings in 2002 and 2003

cc.    On or about March 28, 2003, defendant JOHN N. MILNE and others filed and
caused to be filed with the SEC on Form 10-K the annual report of United Rentals for the year
ending December 31, 2002, which contained United Rentals' audited consolidated financial
statements.  The 10-K and the financial statements included earnings per share numbers for the
years 2000 and 2001 that included the fraudulently booked gain amounts from the MSLBs.

dd.     On or about June 24, 2003, defendant JOHN N. MILNE and others filed and caused to be filed with the SEC on Form 10-K/A the amended annual report of United Rentals for the year ending December 31, 2002, which contained United Rentals' audited consolidated financial statements.

ee.     On or about March 15, 2004, defendant JOHN N. MILNE and others filed and caused to be filed with the SEC on form 10-K the annual report of United Rentals for the year ending December 31, 2003, which contained United Rentals' audited consolidated financial statements.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH FOUR
### (15 U.S.C. §§ 78j(b), 78ff and 18 U.S.C. § 2)
### Securities Fraud

20.     The allegations set forth in paragraphs 1 through 10 and paragraphs 12 through 20 of Count One of this Indictment are hereby realleged and incorporated as though set forth in full herein.

21.     On or about the dates set forth below, each such date constituting a separate count of this Indictment, within the District of Connecticut and elsewhere, defendant JOHN N. MILNE and others, in documents filed with the SEC and disseminated to the investing public, as described below, did knowingly and willfully use and employ manipulative and deceptive devices and contrivances and directly and indirectly: (i) employ devices, schemes, and artifices to defraud; (ii) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engage in acts, practices, and courses of business which would and did

operate as a fraud and deceit upon members of the investing public, in connection with the purchases and sales of United Rentals securities and by the use and of the instruments of communication in interstate commerce and the mails.

| Count | Date | Report |
|---|---|---|
| TWO | March 29, 2002 | URI's Form 10-K for Fiscal Year 2001 |
| THREE | March 28, 2003 | URI's Form 10-K for Fiscal Year 2002 |
| FOUR | March 15, 2004 | URI's Form 10-K for Fiscal Year 2003 |

In violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5; and Title 18, United States Code, Section 2.

### COUNT FIVE
### (15 U.S.C. §§ 78j(b), 78ff and 18 U.S.C. § 2)
### Insider Trading

22.     The allegations set forth in paragraphs 1 through 10 and paragraphs 12 through 20 of Count One of this Indictment are hereby realleged and incorporated as though set forth in full herein.

23.     On or about March 22, 2002, within the District of Connecticut and elsewhere, defendant JOHN N. MILNE and others knowingly and willfully used and employed manipulative and deceptive devices and contrivances, by use of means and instrumentalities of interstate commerce, in violation of Rule 10b-5 of the Rules and Regulations of the SEC (Title 17, Code of Federal Regulations, Section 240.10b-5), in that he engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon members of the investing public in connection with the purchase or sale of securities, in violation of Title 15, United States

Code, Sections 78j(b) and 78ff. Specifically, while in knowing possession of material non-public information, MILNE sold a total of 850,000 shares of URI stock and generated total proceeds of $22,312,499.

In violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5; and Title 18, United States Code, Section 2.

## COUNTS SIX THROUGH EIGHT
### (15 U.S.C. §§ 78m(a), 78ff and 18 U.S.C. § 2)
### False Statements to the SEC

24. The allegations set forth in paragraphs 1 through 10 and paragraphs 12 through 20 of Count One of this Indictment are hereby realleged and incorporated as though set forth in full herein.

25. On or about the dates set forth below, each such date constituting a separate count of this Indictment, within the District of Connecticut and elsewhere, defendant JOHN N. MILNE and others did willfully and knowingly make and cause to be made untrue, false and misleading statements of material fact – namely, materially false earnings per share numbers – in reports and documents required to be filed by United Rentals under the Securities and Exchange Act of 1934 and the rules and regulations thereunder, and failing to provide such further material information as was necessary to make the statements made therein, in light of the circumstances in which they were made, not misleading.

| Count | Date | Report |
|-------|------|--------|
| SIX | March 29, 2002 | URI's Form 10-K for Fiscal Year 2001 |
| SEVEN | March 28, 2003 | URI's Form 10-K for Fiscal Year 2002 |

18

| EIGHT | March 15, 2004 | URI's Form 10-K for Fiscal Year 2003 |

In violation of Title 15, United States Code, Sections 78m(a) and 78ff; Title 17, Code of Federal Regulations, Sections 240.12b-20, 240.13a-1 and 240.13a-13, and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION UNDER 28 U.S.C. § 2461(c) & 18 U.S.C. § 981(a)

(Conspiracy to Commit Securities Fraud)

Upon conviction of conspiracy to commit securities fraud as charged in Count One of this Indictment, the defendant or defendants shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of conspiracy, 18 U.S.C. §§ 371 and 15 U.S.C. §§ 78j(b) and 78ff, (i.e., fraud in connection with the sale of securities) including but not limited to the following:

> Money Judgment:
>
> A sum of money equal to $17,214,648 in United States currency, in that such sum in aggregate is property which constitutes or is derived from proceeds traceable to the securities fraud conspiracy, 18 U.S.C. § 371, as alleged in Count One, namely, conspiracy to violate 15 U.S.C. §§ 78j(b) and 78ff.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

All in accordance with 18 U.S.C. § 981(a)(1) as incorporated by 28 U.S.C. § 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

# FORFEITURE ALLEGATION UNDER 28 U.S.C. § 2461(c) & 18 U.S.C. § 981(a)

(Substantive Counts of Securities Fraud)

Upon conviction of one or more of the counts of securities fraud as charged in Counts two through five of this Indictment, the defendant shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to the violations of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, and traceable to the violations of fraud in the sale of securities violation of 15 U.S.C. §§ 78j(b) and 78ff, including but not limited to the following:

> Money Judgment:
>
> A sum of money equal to the total amount of any money or property, real or personal, which constitutes or is derived from proceeds traceable to, respectively, the securities fraud alleged in Counts two through five, in violation of 15 U.S.C. §§ 78j(b) and 78ff.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

All in accordance with 18 U.S.C. § 981(a)(1) as incorporated by 28 U.S.C. § 2461(c), and

Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

_____

FOREPERSON

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

NORA R. DANNEHY
DEPUTY UNITED STATES ATTORNEY

PAUL A. MURPHY
ASSISTANT UNITED STATES ATTORNEY

MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY

22