UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| v. | : | Criminal No. 3:08CR 90 (JCH) |
| JOHN N. MILNE | : | December 18, 2017 |

**GOVERNMENT'S REPLY MEMORANDUM IN AID OF SENTENCING ON DEFENDANT MILNE'S VIOLATIONS OF HIS COPNDITIONS OF SUPERVISED RELEASE**

This Memorandum is submitted to aid the Court in determining an appropriate sentence for defendant Milne's violations of his conditions of supervised release. The United States Probation Office has submitted a violation report that sets forth a Guidelines' range of 3-9 months incarceration and a subsequent period of supervised release not to exceed the original term of supervised release less the term of incarceration. *See* Violation Report at 3; 18 U.S.C. § 3583(h). In addition to the Violation Report, the U.S. Probation Office previously prepared a Report of Non-Compliance dated February 2, 2013. Pursuant to that report, Defendant Milne admitted two (2) violations in a hearing Before the Honorable Ellen Bree Burns on March 14, 2013. (Doc. No. 108).

In response to the recently filed Violation Report and in advance of the hearing scheduled for December 18, 2017, Defendant Milne has filed a Memorandum Regarding Violation Hearing ("Defendant's Memorandum.") (Doc. No. 196). In Defendant Milne's Memorandum he sets forth no reasons for the Court to depart below the recommended Guidelines' range for such violations, and makes yet another promise to pay and even asserts, that "Mr. Milne believes he realistically could satisfy his full obligation to the SEC in anywhere from 4 to 8 years" *Id.* This

1

time period well beyond any term of supervised release that could be ordered by the Court and in direct contradiction to his agreement to make disgorgement previously made before this Court. (Plea Agreement at 2; PSR Second Addendum at 4). The obligation to make disgorgement is an obligation the Defendant agreed to make in the original Plea Agreement that he signed before the Court and which he agreed to satisfy as part of his sentence. Moreover, this obligation was made an essential part of his conditions of supervised release. It is important to note that the **<u>disgorgement</u>** is not a financial penalty a kin to a fine, but to the contrary represents the surrendering of ill-gotten gains. This most simply means that Defendant Milne at one point in his criminal conduct actually had this amount of money (or more) and was obligated to disgorge himself of it. Instead, over the intervening years he had chosen to invest it in ventures, spend it, or otherwise place it beyond reach of the United States Securities and Exchange Commission.

As there are no valid reasons to depart downwardly and since there does exist a valid reason to upwardly depart, including the purchase of a Mercedes Benz in further violation of the conditions of supervised release, the Government asserts that a sentence in the Guideline range and a further period of Supervised Release would be appropriate.

**I.     <u>Brief Procedural History</u>**

As background, John Milne was an officer and director of United Rentals, Inc. from its inception in 1997 through his termination in mid-2005 following his refusal to cooperate with an internal company investigation looking into allegations raised by the SEC. He was thereafter indicted on April 3, 2008, for various crimes relating to his tenure at United Rentals. Defendant Milne pled guilty on October 13, 2009 to one count of conspiracy to falsify the books and records of United Rentals while serving as its President and Chief Financial Officer, and was

sentenced on March 11, 2010 to 27 months in prison followed by three years of supervised release.

Defendant Milne resolved his criminal case and the SEC's parallel civil action at the same time, and part of the resolution of the civil case required him to pay the SEC a total of $6,250,000, which is to be distributed to the investors of United Rentals who were victims of the fraud through a "Fair Fund." That agreement was incorporated into the judgment in this case, where the Court agreed with the parties' joint recommendation not to impose an order of restitution or a fine, but rather to make the defendant's payment of his $6,250,000 obligation to the SEC a special condition of his supervised release. (*See* Judgment of Conviction, Docket No. 89).

Defendant made his first series of disgorgement payments totaling $1,000,000 to the Court as required by the civil judgment. Defendant Milne pledged his interests in a series of ventures which turned out to be relatively, if not completely worthless. It does not appear that the SEC was able to verify the value of these holdings prior to accepting them as pledged, but regardless, they rendered little value and Milne is now clearly in default on his payment of the remaining $5,250,000. The Court cannot accept another such empty promise.

The government is advised that in February 2013, Defendant Milne agreed with the SEC, as reflected in a letter dated February 1, 2013, to pay the SEC approximately 25% of his salary and bonus. To the Government's knowledge, he has made only a handful of payments of $6,375 pursuant to that agreement and none in 2017.

As additional background, the Court should note that over the years Defendant Milne's personal expenses have been nothing short of remarkable. In 2013, Milne listed monthly

expenses of over $99,000 per month. (Doc. No. 94). As indicated to the Court (Judge Burns) defendant reported annualized expenses approaching $1.2 million. The monthly expenses reported at that time include such things as: (a) $21,600 under the category "mortgage/rent," (b) $5,833 for "homecare/cleaning," (c) $4,105 for "clothing/dry cleaning," (d) $3,468 for "pet care services," (e) $1,775 for "personal care," (g) $1,667 for "miscellaneous cash expense," and (f) $1,378 for "entertainment." (Doc. No. 94).

As the Court itself articulated: "He's got some interesting expenditures, $99,000 a month and $5,000 a month for a dog or something. Come on." (March 14, 2013, Hearing Tr. at 6). Counsel for Milne responded: "I can make this representation with the full authority of my client, that he has been in the process with his wife of reducing dramatically those expenditures, and he intends to continue to do that. I don't want anybody to have an appearance that he's flouting the Court's authority." *Id.* at 6. Government counsel responded that "we think Mr. Milne is not doing everything he can to pay the SEC at this point in time, and that's what we think ultimately is going to be an issue for your honor in this case." *Id.* at 9.

In 2013, the Government informed the Court that the Defendant's level of expenditures raised obvious concerns given his default in his payment obligations to the SEC. "No explanation was given for why he carries such major expenses, yet [was and still] is in default of his payments to the SEC and is willing to pay the SEC only 25% of his wages – a sum it presumably could get simply by garnishing his wages. . . . He apparently has made the decision to make large payments of other expenses, which appear to be luxuries, rather than making a full-fledged effort to pay down his court-ordered obligations to the SEC." (Doc. No. 94 at 4).

Since the 2013 hearing at which the Defendant admitted the two violations, the

4

sentencing phase has been continued numerous times. Each Stipulation as to Sentencing on the Supervised Release Violation contained the explicit rationale that the purpose of the continuance was "so that he has the opportunity to earn further money and make payments to the SEC in advance thereof [of the hearing]." *See e.g.,* Doc 155-1. Regardless of this rationale, Milne made no payments to the SEC in 2017 and only $6,500 in 2016. (Defendant's Exhibit B.) His attempted efforts to make payments that were returned and which were then spent by him on other expenses, should be given no credit. By his own records, Milne has had consulting billings of over $2 million in 2015-2017, paid virtually no federal income taxes because of his "claimed" net loss carry forward, and yet has only paid about $300,000 to the SEC.

In his original PSR, Milne reported total assets of over $22 million. (PSR at Second Addendum), yet has failed to make the Court ordered disgorgement.

Additionally, Milne has purchased a new Mercedes Benz E Class 350 S4 for a total cost of over $85,000 and incurred a loan, plus interest, of over $79,000. He also has monthly rent of over $11,500 per month and other non-medical monthly expenses of over $13,000 per month. He lists his total monthly cash expenses as $46,147 per month. He still appears to be making the business decision of spending on himself and not paying the SEC. Just two examples include a virtual closet service of over $52,000 for 2015-17 and $860 to teddy bear of Beverly Hills. In 2017, Milne spent $17,000 at Hermes.

In short, Defendant Milne has been given years to comply with the conditions of is Supervised Release to make disgorgement to the SEC and has failed to do so. As would be the case with any defendant on supervised release who has repeated failed to comply with the Court's orders and has failed to follow the instructions of the US Probation office, he should

5

receive sanctions. The Guidelines sanctions seem appropriate. It has been and remains his obligation to pay and disgorge it is not the Government's obligation to remind him each month to make the decision to the SEC rather than spend the money as he sees fit.

Milne has repeated made the made a business decision to flout the Court's order and has chosen not to make Court ordered payment.

## V.     Conclusion

For the forgoing reasons, the Government asserts that a period of incarceration in the Guidelines range followed by additional years of supervised release would be appropriate and no greater than necessary given Defendant Milne's repeated acts of non-compliance and violations.

                    Respectfully submitted,

                    JOHN H. DURHAM
                    UNITED STATES ATTORNEY

                        /s/

                    MICHAEL S. MCGARRY
                    ASSISTANT U.S. ATTORNEY
                    Federal Bar No. CT25713
                    157 Church Street, 25th Floor
                    New Haven, CT 06510
                    Tel.: (203) 821-3700
                    Michael.McGarry@usdoj.gov

**CERTIFICATION**

I hereby certify that on December 18, 2017 the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

                                                  /s/
                                        MICHAEL S. MCGARRY
                                        ASSISTANT UNITED STATES ATTORNEY